UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Kari Sue Kramer and Paul Kramer,<br><br>Plaintiffs,<br><br>v.<br><br>Ford Motor Company,<br><br>Defendant. | Case No. 12-cv-1149 (SRN/FLN)<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Thomas J. Murray and Mary S. O'Neill, Thomas J. Murray & Associates, 111 East Shoreline Drive, Sandusky, Ohio 44870; Gregory N. McEwen and Peter J. Kestner, McEwen Law Firm, 5850 Blackshire Path, Inver Grove Heights, Minnesota 55076; and James L. Murray, Murray & Murray Co., L.P.A., 111 East Shoreline Drive, Sandusky, Ohio 44870, for Plaintiffs.

David R. Kelly, Jennifer K. Huelskoetter, and Michael R. Carey, Bowman and Brooke LLP, 150 South Fifth Street, Suite 3000, Minneapolis, Minnesota 55402; Elizabeth B. Wright, Thompson Hine LLP, 3900 Key Center, 127 Public Square, Cleveland, Ohio 44114; and Jennifer M. Mountcastle, Thompson Hine LLP, 41 South High Street, Suite 1700, Columbus, Ohio 43215, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

## I. INTRODUCTION

This matter is before the Court on Plaintiffs' Motion to Appoint Professor Todd H. Hubing as an Expert Pursuant to Federal Evidence Rule 706 and to Amend the Scheduling Order [Doc. No. 136]. For the reasons set forth below, the Court denies Plaintiffs' Motion to the extent that it seeks appointment of Professor Hubing as an expert under Rule 706 and grants Plaintiffs' Motion to the extent that it seeks to amend the Scheduling Order.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit arises from a single-vehicle accident involving Plaintiff Kari Sue Kramer on May 9, 2008.  (Am. Compl. [Doc. No. 61] ¶¶ 1, 10.)  Plaintiffs allege that the accident was the result of a sudden and unintended acceleration of the vehicle that occurred—or was not prevented—because of several defects in the vehicle.  (See id. ¶¶ 10, 14–21.)  These alleged defects include an electronic throttle control system ("ETCS") that opened the throttle without input from the driver, failure to include a failsafe mechanism, failure to include a brake override system, and failure to provide vacuum to the brake booster when the throttle is maintained in an open condition.  (See id. ¶¶ 15–17, 20.)  The Amended Complaint in this matter asserts eight causes of action against Defendant:  strict liability for defective design (Count I), strict liability for failure to warn (Count II), negligent design (Count III), negligent failure to warn (Count IV), breach of warranty (Count V), negligence per se (Count VI), consumer fraud (Count VII), and loss of consortium (Count VIII).  (Id. ¶¶ 1, 13–49.)

Defendant moved for summary judgment on these claims on the grounds that there is no evidence of a defect in the subject vehicle or any Ford vehicle that did or could cause the alleged unintended acceleration, Plaintiff Kari Sue Kramer never read the warnings that accompanied the vehicle, and Plaintiffs have not identified any fraud or misrepresentation that caused their damages.  (See Mem. in Supp. of Def.'s Mot. for Summ. J. [Doc. No. 66] (filed under seal), at 1–2.)  In support of its motion, Defendant argued that Plaintiffs' liability experts—Neil Hannemann, David Bilek, and William Berg—admit that they are unaware of a defect in the subject vehicle or any other Ford

2

vehicle that did or could cause an unintended acceleration.  (Id. at 1, 3.)  At the same time, Defendant also brought three motions in limine to exclude those experts' testimony and opinions [Doc. Nos. 69, 75, 81].

While those motions were pending, Plaintiffs brought their motion seeking to have Professor Todd Hubing appointed by the Court as an expert witness and to amend the Scheduling Order.  (See Mot. to Appoint Prof. Hubing as an Expert [Doc. No. 136] ("Pls.' Mot.") at 1–2.)  Professor Hubing was the director of certain research conducted by Clemson University's International Center for Automotive Research regarding ETCSs and unintended acceleration.  (See id. at 1; Transcript of Sept. 12, 2014 Mot. Hr'g [Doc. No. 173] ("Tr.") 29–34.)  Plaintiffs' Motion was heard on September 12, at which time the Court heard testimony from Professor Hubing.  While Professor Hubing had not yet completed his final report resulting from Phase IV of that research (which was the portion of the research in which a Ford vehicle was analyzed) at the time of the hearing, he did file a copy of his final report with the Court on October 16.  (See Tr. 29–34, 46–52.)  The purpose of the report, titled "Comparison of the AP-to-ECM Interfaces on Vehicles with Low and High Reported Rates of Unintended Acceleration" (the "Report"), is summarized as follows:

> [The Report] examines the [accelerator pedal]-to-[engine control module] interfaces of five vehicles equipped with electronic throttle control systems. . . . The purpose of the study is to identify any differences in the [accelerator pedal]-to-[engine control module] interfaces of vehicles with high reported rates of unintended acceleration compared to vehicles with low reported rates of unintended acceleration.  The study does not attempt to identify the root causes of unintended acceleration; however it points out important design issues that suggest a set of best practices for electronic throttle control design.

(Technical Report [Doc. No. 174] at 3.)  The parties subsequently filed limited supplemental briefing regarding the relevance of the Report to this lawsuit.  In light of the subject matter of the Motion, the Court denied Defendant's motion for summary judgment and motions in limine without prejudice and without reaching the merits.  (Order dated Aug. 20, 2014 [Doc. No. 166] at 3.)

## III.   DISCUSSION

### A.   Motion for Court-Appointed Expert

Plaintiffs request that the Court appoint Professor Hubing as an expert witness in this case pursuant to Rule 706 of the Federal Rules of Evidence.  (Pls.' Mot. at 1.)  Defendant, on the other hand, argues that Professor Hubing is not a proper court-appointed expert because he is not impartial.  (Def.'s Mem. in Opp. to Appointment of Todd H. Hubing as Rule 706 Expert and to Amending the Scheduling Order [Doc. No. 157] ("Def.'s Opp.") at 1.)  Defendant also argues that his testimony will be unhelpful because he has no knowledge with respect to Defendant's engineering design process or risk assessment process.  (Id.)

The decision to appoint an expert is within the Court's discretion, see, e.g., Fallon v. Coulson, No. 93-1629, 1993 WL 349355, at *2 (8th Cir. Sept. 9, 1993), and in its discretion, this Court finds that it is not appropriate for Professor Hubing to serve as a court-appointed expert in this case.  First, according to Professor Hubing's testimony, he knows very little about this lawsuit or the subject vehicle.  (See Tr. 95:24–96:15.)  In addition, he has never tested Ford's Lincoln Town Car, which is the type of vehicle at

4

issue in this lawsuit, and he does not know whether the test results from his research regarding the Ford Mustang would necessarily be the same as the results obtained if he were to test the Town Car.  (Id. 69:2-12.)  Therefore, it is not apparent that his testimony would assist the Court.

Second, while there is little case law on this issue, it is clear that a court-appointed expert must be "neutral."  See In re High Fructose Corn Syrup Antitrust Litig., 295 F.3d 651, 665 (7th Cir. 2002).  In other words, the expert must be able to "respond to the technical or scientific issue in a manner consistent with generally accepted knowledge in that area, without regard to the interests advanced by either party."  Joe S. Cecil & Thomas E. Willging, Reference Manual on Scientific Evidence 544 n.48 (1st ed. 1994).  Accordingly, individuals with "significant ideological, financial, or professional interests in debatable normative issues related to the issue in dispute" may not serve as court-appointed experts.  Id.  In this case, Professor Hubing's research at Clemson University has been funded by a consortium of plaintiffs' lawyers, and counsel for Plaintiffs in this case, Thomas Murray, is a part of that consortium.  (See, e.g., Tr. 17:24–18:24.)  Although Mr. Murray apparently did not contribute to the funding for Phase IV of the research, the contract governing the research is between Clemson University and Mr. Murray's law firm as the "sponsor" of the research.  (See id. 18:13-24, 47:13-19.)  Because of these connections between Plaintiffs' counsel and Professor Hubing's research, the Court finds that Professor Hubing is not sufficiently "neutral" for purposes of serving as a court-appointed expert witness.  Accordingly, Plaintiffs' Motion is denied in that regard.

### B. Motion to Amend the Scheduling Order

In the event the Court declined to appoint Professor Hubing as an expert, Plaintiffs requested permission to supplement the report of their expert, Neil Hannemann, to address Professor Hubing's findings. (Pls.' Supplemental Mem. [Doc. No. 177] at 7.) In opposition, Defendant argues that: (1) it would be futile to allow Plaintiffs to supplement Mr. Hanneman's report because Professor Hubing's report contains no information that would allow Mr. Hannemann to conclude that there was a defect in the subject vehicle, (2) any new opinion from Mr. Hannemann would be inadmissible because it would not survive Daubert scrutiny and would constitute impermissible bootstrapping, and (3) Plaintiffs' belated attempt to rely on Professor Hubing is neither substantially justified nor harmless because Plaintiffs could have obtained Professor Hubing's opinion years ago and Defendant has already briefed and argued its motion for summary judgment. (See Def.'s Mem. in Resp. to Pls.' Supplemental Mem. [Doc. No. 181] at 7–9.)

Although Professor Hubing is not a proper court-appointed expert witness, his testimony and Report demonstrate that he has an opinion that could be important to this case, if properly introduced. First, in concluding that the ETCS in the subject vehicle was "defective and unreasonably dangerous," Mr. Hannemann stated:

> One or several integral electrical or mechanical components intermittently failed. Incorrect signals are being sent to the throttle body during the [sudden unintended acceleration] events experienced by Mrs. Kramer and others. These failures allowed the vehicle to accelerate without driver input.

(Pls.' Supplemental Mem. at 7 & Ex. 8 at 17.) Plaintiffs argue that Professor Hubing's findings supplement Mr. Hannemann's opinion in part because Professor Hubing has

demonstrated "empirical evidence of electronic failures that can open the throttle." (Pls.' Supplemental Mem. at 8.)  Because it appears that Professor Hubing's findings may be relevant to Mr. Hannemann's report, it is not clear to the Court that it would be futile to allow Mr. Hannemann to incorporate those findings.  Second, and similarly, it is premature to decide that a new opinion from Mr. Hannemann would not survive Daubert scrutiny or would constitute impermissible bootstrapping.  However, Defendant certainly may challenge Mr. Hannemann's opinion on those grounds if and when Plaintiffs choose to supplement his report.

Finally, although there is no question that the expert discovery deadlines have passed, expert evidence should not be excluded if the failure to timely disclose the evidence "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  Here, neither Professor Hubing's preliminary nor final report on the Phase IV research was completed by the time that Mr. Hannemann had completed his report on May 1, 2013 and the expert deadlines had passed.  (See Pls.' Supplemental Mem., Exs., 2, 3, 8.)  In fact, Plaintiffs argue that "the testing of Ford's electronics didn't begin until after the discovery deadline," and that Plaintiffs' counsel informed Defendant's counsel of the relevance of the testing as soon as they were made aware that it had been completed. (Pls.' Reply at 4 (emphasis omitted); see Murray Decl. [Doc. No. 162], Ex. 4.)  Therefore, the Court finds that Plaintiffs' failure to timely supplement Mr. Hannemann's report with Professor Hubing's findings is substantially justified.  The Court also finds that these circumstances constitute "good cause" for modification of the Scheduling Order under Rule 16.  See Fed. R. Civ. P. 16(b)(4) (stating that a pre-trial scheduling

7

order may be modified "for good cause and with the judge's consent"); Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716–17 (8th Cir. 2008) (citation and internal quotations omitted) ("The primary measure of good cause is the movant's diligence in attempting to meet the [scheduling] order's requirements.").

Thus, Plaintiffs may allow Mr. Hannemann to review Professor Hubing's report and—should they so choose—submit an amended report from Mr. Hannemann based on that new information. Defendant will then be permitted a full opportunity to amend its expert testimony in response, depose Mr. Hannemann, and re-brief its summary judgment motion and motions in limine. The Scheduling Order will be amended accordingly, as set forth below.

V.   **ORDER**

Based on the foregoing and all the files, records, and proceedings herein**, IT IS HEREBY ORDERED THAT:**

1. Plaintiffs' Motion to Appoint Professor Todd H. Hubing as an Expert Pursuant to Federal Evidence Rule 706 and to Amend the Scheduling Order [Doc. No. 136] is **GRANTED IN PART AND DENIED IN PART**, as set forth herein.

2. The deadlines set forth in the Scheduling Orders in this case [Doc. Nos. 16, 107] are amended as follows:

    a. If Plaintiffs decide to amend the expert report of Neil Hannemann as allowed herein, full disclosure of the substance of his amended testimony shall be made by Plaintiffs on or before March 31, 2015. If Defendant decides to amend the report of any of its expert witnesses in response, full disclosure of the substance of the testimony to be offered by those witnesses shall be made by Defendant on or before June 1, 2015.

    b. If Defendant decides to re-depose Mr. Hannemann, it shall do so on or before June 1, 2015. If Defendant submits an amended report of any

      of its experts, Plaintiffs may re-depose those witnesses on or before July 31, 2015.

c. All motions for summary judgment and motions to exclude expert testimony shall be filed and served on or before September 15, 2015.

d. This case shall be ready for trial on and after January 15, 2016, at which time it will be placed on the Court's jury trial calendar.

Dated:  January 29, 2015                  s/Susan Richard Nelson
                                                    SUSAN RICHARD NELSON
                                                    United States District Judge